UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE SHAPIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TG THERAPEUTICS, INC., MICHAEL S. WEISS and SEAN A. POWER,<br><br>　　　　　　　　　　Defendants. | Case No. 1:22-cv-06106-JSR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF SEAN CONONIE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................... 3

III. ARGUMENT ................................................................................................. 6

A. Movant Should Be Appointed Lead Plaintiff ................................................ 6

1. Mr. Cononie's Motion is Timely ................................................................. 7

2. Mr. Cononie has the Largest Financial Interest in the Relief Sought by the Class ......................................................................... 7

3. Mr. Cononie Otherwise Satisfies the Requirements of Rule 23 .................. 8

B. The Court Should Approve Movant's Selection of Counsel .......................... 9

IV. CONCLUSION ............................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bishins v. CleanSpark, Inc.*,
   2021 WL 5741574 (S.D.N.Y. Dec. 2, 2021) ................................................................... 7, 8, 9

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   2020 WL 2614703 (S.D.N.Y. May 22, 2020) (J. Rakoff) ....................................................... 9

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................... 7, 8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ............................................................................................ 10

*McKenna v. Dick's Sporting Goods, Inc.*,
   2018 WL 1083971 (S.D.N.Y. Feb. 27, 2018) ................................................................ 7, 8, 10

*Moshell v. Sasol Limited, et al.*,
   Case No. 1:20-cv-01008-JPC, ECF No. 52 (S.D.N.Y. May 4, 2020) ................................ 3, 10

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) (J. Rakoff) ............................................................ 7, 9, 10

### STATUTES

15 U.S.C. § 78u-4(a)(3)(A) ............................................................................................................ 7

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................................... 1, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................... 1, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................................ 9

Defendants under the Securities Exchange Act of 1934 .................................................................. 1

Prescription Drug User Fee Act .................................................................................................. 5, 6

Private Securities Litigation Reform Act of 1995 .......................................................................... 1

PSLRA .................................................................................................................................. *passim*

- iii -

Securities Exchange Act of 1934 Section 21D(a)(3), 15 U.S.C. § 78u-4(a)(3)(B) ..........................1

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 23 ..........................................................................1, 2, 6, 8

Sean Cononie ("Mr. Cononie" or "Movant") respectfully submits this Memorandum of Law in support of his Motion for: (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of his selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel for the class; and (3) granting such other and further relief as the Court may deem just and proper.

## I.   INTRODUCTION

The above-captioned federal securities class action alleges that Defendants made materially false and misleading statements or omissions between January 15, 2020 and May 31, 2022 ("Class Period") concerning U.S. Food and Drug Administration ("FDA") approval and safety data for TG Therapeutics, Inc.'s ("TG Therapeutics" or "TGTX") therapeutic product candidates, Ublituximab and Umbralisib, which resulted in economic loss to investors who purchased TG Therapeutics securities during the Class Period. These facts give rise to claims against Defendants under the Securities Exchange Act of 1934, which are governed by the PSLRA.

The PSLRA directs the Court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, Mr. Cononie respectfully submits that he is the "most adequate plaintiff" under the PSLRA's provisions and should be appointed Lead Plaintiff. Mr. Cononie believes that he has the largest financial interest in this action by virtue of his substantial investments in TG Therapeutics throughout the Class Period. Specifically, Mr. Cononie expended $11,918,146.09 purchasing and retaining 13,061 TG Therapeutics shares on Nasdaq during the Class Period at artificially inflated prices and suffered losses of $462,970.94.

In addition to asserting the largest financial interest in this litigation, Mr. Cononie also meets the applicable requirements of Rule 23 because his claims are typical of absent class members and because he will fairly and adequately represent the interests of the Class. Mr. Cononie, a resident of Davie, Florida, is Chief Executive Officer of COSAC, a foundation established to provide services to the homeless population; holds a college degree from Florida Atlantic University; and is a sophisticated retail investor, given that he has over 35 years of experience in managing his own investment portfolio. *See* Movant's Declaration, attached as Ex. E to the Declaration of Lucas E. Gilmore in Support of Motion of David Cononie to Appoint Lead Plaintiff and Approve Selection of Lead Counsel ("Gilmore Decl.") filed herewith. Given his significant loss, financial interest in prosecuting this case, and background, Mr. Cononie has both the incentive and ability to supervise and monitor counsel. Further, Mr. Cononie fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action. *See* Movant's Certification and Declaration, attached as Exs. A and E to the Gilmore Decl.

Mr. Cononie has also demonstrated his adequacy through his selection of Hagens Berman as proposed Lead Counsel for the Class. Hagens Berman is a nationally recognized class action

firm that has successfully litigated numerous securities class actions leading to substantial recoveries benefitting harmed investors. Hagens Berman is qualified to prosecute this case and has extensive experience in similar securities fraud class actions, including in this District. *See* Hagens Berman's Firm Résumé, Gilmore Decl., Ex. D; *see Moshell v. Sasol Limited, et al.*, Case No. 1:20-cv-01008-JPC, ECF No. 52 (S.D.N.Y. May 4, 2020) (appointing Hagens Berman as lead counsel and noting, "Hagens Berman's resume demonstrates that it possesses experience litigating securities class actions and has had success in these matters in the past…. This demonstrates that the firm is experienced and competent such that approval is warranted.").

Accordingly, based on Mr. Cononie's significant losses, financial interest, and his commitment and ability to oversee this action, Mr. Cononie respectfully requests the Court appoint him as Lead Plaintiff and otherwise grant his motion.

## II.   FACTUAL BACKGROUND

Based in New York, New York, TG Therapeutics is a commercial stage biopharmaceutical company focused on the acquisition, development and commercialization of novel treatments for B-cell malignancies and autoimmune diseases. ¶ 28.[1] TG Therapeutics' therapeutic product candidates include Ublituximab, an investigational glycoengineered monoclonal antibody for the treatment of B-cell Non-Hodgkin lymphoma, chronic lymphocytic leukemia ("CLL"), and relapsing forms of multiple sclerosis; and Umbralisib, or UKONIQ, an oral inhibitor of PI3K-delta and CK1-epsilon for the treatment of CLL, marginal zone lymphoma, and follicular lymphoma. ¶ 28. TG Therapeutics' securities trade on the Nasdaq Capital Market under the trading symbol "TGTX." ¶ 22.

---

[1] All "¶" references are to the Class Action Complaint filed by Plaintiff Eugene Shapiro (ECF No. 1), the initially filed complaint in the above-captioned action.

In January 2020, TG Therapeutics initiated a rolling submission of a New Drug Application ("NDA") to the FDA, requesting accelerated approval of Umbralisib as a treatment for patients with previously treated marginal zone lymphoma ("MZL") and follicular lymphoma ("FL") (the "Umbralisib MZL/FL NDA"). ¶ 29.

In December 2020, TG Therapeutics initiated a rolling submission of a Biologics License Application ("BLA") to the FDA for Ublituximab in combination with Umbralisib (together, "U2"), as a treatment for patients with CLL (the "U2 BLA"). ¶ 42.

In August 2021, TG Therapeutics submitted a supplemental New Drug Application ("sNDA") for Umbralisib to add an indication for CLL and small lymphocytic lymphoma ("SLL") in combination with Ublituximab (the "U2 sNDA").  ¶ 53.

Thereafter, in September 2021, TG Therapeutics submitted a BLA to the FDA for Ublituximab as a treatment for patients with relapsing forms of multiple sclerosis ("RMS") (the "Ublituximab RMS BLA"). ¶ 54.

The complaint alleges that, throughout the Class Period, Defendants made false and misleading statements regarding TG Therapeutics' business, operations and compliance policies. Specifically, the Defendants alleged misrepresented and concealed that: (i) clinical trials revealed significant concerns related to the benefit-risk ratio and overall survival data of Ublituximab and Umbralisib; (ii) accordingly, it was unlikely that TG Therapeutics would be able to obtain FDA approval of the Umbralisib MZL/FL NDA, the U2 BLA, the U2 sNDA, or the Ublituximab RMS BLA in their current forms; and (iii) as a result, TG Therapeutics had significantly overstated Ublituximab and Umbralisib's clinical and/or commercial prospects. ¶ 63.

The complaint alleges that the truth emerged over a series of partial disclosures beginning first on November 30, 2021, when TG Therapeutics issued a press release "announc[ing] the

- 4 -

[FDA] has notified [TG Therapeutics] that it plans to host a meeting of the Oncologic Drugs Advisory Committee (ODAC) in connection with its review of the pending Biologics License Application (BLA)/supplemental New Drug Application (sNDA) for the combination of ublituximab and UKONIQ® (umbralisib) (combination referred to as U2) for the treatment of adult patients with [CLL] and [SLL]."  ¶ 64. TG Therapeutics advised that "[t]he FDA has notified [TG Therapeutics] that potential questions and discussion topics for the ODAC include: the benefit-risk of the U2 combination in the treatment of CLL or SLL, and the benefit-risk of UKONIQ in relapsed/refractory [MZL] or [FL].  *Id*. In addition, as part of the benefit-risk analysis, the overall safety profile of the U2 regimen, including adverse events (serious and Grade 3-4), discontinuations due to adverse events, and dose modifications, is expected to be reviewed."  *Id*. The release also stated that "[t]he FDA's concern giving rise to the ODAC meeting appears to stem from an early analysis of overall survival from the UNITY-CLL trial."  *Id*. On this news, TG Therapeutics' stock price fell $8.16 per share, or nearly 35%, to close at $15.20 per share on November 30, 2021. ¶ 65.

Then, on April 15, 2022, TG Therapeutics issued a press release "announc[ing] that [TG Therapeutics] has voluntarily withdrawn the pending [BLA]/sNDA] for the combination of ublituximab and UKONIQ® (umbralisib) (combination referred to as U2) for the treatment of adult patients with [CLL] and [SLL]."  ¶ 66. The press release stated that "[t]he decision to withdraw was based on recently updated overall survival (OS) data from the UNITY-CLL Phase 3 trial that showed an increasing imbalance in OS."  *Id*. On this news, TG Therapeutics' stock price fell $1.93, or 22%, to close at $6.92 per share on April 18, 2022. ¶ 67.

Thereafter, on May 31, 2022, TG Therapeutics issued a press release announcing that the FDA extended the Prescription Drug User Fee Act date for Ublituximab to December 28, 2022

- 5 -

"to allow time to review a submission provided by [TG Therapeutics] in response to an FDA information request, which the FDA deemed a major amendment." ¶ 68. On this news, TG Therapeutics' stock price fell $0.75 per share, or by more than 14%, to close at $4.42 per share on May 31, 2022. ¶ 69.

Finally, on June 1, 2022, the FDA announced that, due to safety concerns, it had withdrawn its approval for Umbralisib for the treatment of MZL and FL. Specifically, the FDA provided that "[u]pdated findings from the UNITY-CLL clinical trial continued to show a possible increased risk of death in patients receiving [UKONIQ]. ¶ 70. As a result, we determined the risks of treatment with [UKONIQ] outweigh its benefits." *Id*. On this news, TG Therapeutics' stock price fell by an additional $0.51 per share, or 11.5%, to close at $3.91 per share on June 1, 2022. ¶ 71.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of TG Therapeutics' securities, Mr. Cononie and other class members have suffered significant losses and damages. ¶ 72.

### III.    ARGUMENT

**A.    Movant Should Be Appointed Lead Plaintiff**

Mr. Cononie should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws and provides a presumption in favor of the movant with the "largest financial interest" in the relief sought by the Class and that satisfies the relevant requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Mr. Cononie believes he is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

1. **Mr. Cononie's Motion is Timely**

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On July 18, 2022, the above-captioned action was filed in this District. The same day, a notice of pendency of the above-captioned action was published on *GlobeNewswire*, alerting investors that the deadline to seek Lead Plaintiff status is September 16, 2022. *See* Notice of Pendency, Gilmore Decl., Ex. C. Accordingly, Movant satisfies the PSLRA's 60-day requirement through the filing of this motion.

2. **Mr. Cononie has the Largest Financial Interest in the Relief Sought by the Class**

In determining which plaintiff has the greatest financial interest in the outcome of a securities litigation, courts have looked to four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Bishins v. CleanSpark, Inc.*, 2021 WL 5741574, at *2 (S.D.N.Y. Dec. 2, 2021); *McKenna v. Dick's Sporting Goods, Inc.*, 2018 WL 1083971, at *4 (S.D.N.Y. Feb. 27, 2018); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). "In determining each proposed lead plaintiff's financial interest in the litigation, courts consider first and foremost the amount of their respective losses. *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (J. Rakoff).

During the Class Period, Mr. Cononie expended $11,918,146.09 purchasing a total of 610,812 TG Therapeutics shares on Nasdaq during the Class Period at artificially inflated prices and suffered losses of $462,970.94. *See* Movant's Certification and Loss Chart, Gilmore Decl., Exs. A, B. To the best of Movant counsel's knowledge, there is no other plaintiff with a larger

financial interest than Movant. Therefore, Mr. Cononie satisfies the PSLRA's prerequisite of having the largest financial interest in the relief sought by the Class.

### 3. Mr. Cononie Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Mr. Cononie otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

"The Rule 23 analysis in the context of appointment of lead plaintiff 'need not be as complete as would a similar determination for the purpose of class certification.'… The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements…. With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'… While the claim need not be identical, it must be substantially similar to the other members' claims…. The adequacy requirement is satisfied where the proposed lead plaintiff 'adequately protects the interests of the class.'… The presumptive lead plaintiff meets this requirements when this plaintiff: (1) has no conflict of interest with the other members of the class, (2) has sufficient interest in the outcome of the case, and (3) has selected counsel that is qualified, experiences, and generally able to conduct the litigation in question." *McKenna*, 2018 WL 1083971, at *5; *see also Bishins*, 2021 WL 5741574, at *2; *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D at 102-3.

Here, Mr. Cononie satisfies the typicality requirement because Mr. Cononie's claims arise from the same course of events and he makes similar legal arguments to prove Defendants' liability as the other putative class members. "Like the other members of the class, [Mr. Cononie] seeks recovery for losses incurred as a result of defendants' alleged misrepresentations and omissions with respect to [FDA approval and safety of Ublituximab and Umbralisib], whose

revelation resulted in declines in the price of [TG Therapeutics'] securities." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d at 624.

Likewise, Mr. Cononie satisfies the adequacy requirement. Mr. Cononie is the Chief Executive Officer of COSAC, a foundation established to provide services to the homeless population; holds a college degree from Florida Atlantic University; and is a sophisticated retail investor, given that he has over 35 years of experience in managing his own investment portfolio. *See* Gilmore Decl., Ex. E. Further, Mr. Cononie has retained Hagens Berman, counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action. *See* Gilmore Decl., Ex. D. There is no evidence of antagonism or conflict between Mr. Cononie's interests and the interests of the Class. Additionally, Mr. Cononie has submitted a signed Certification demonstrating the significant losses he has incurred and his sufficient interest in the outcome of this litigation, which will ensure vigorous prosecution of the litigation. *See* Gilmore Decl., Exs. A, E. Finally, Mr. Cononie has provided a declaration affirming his understanding of the lead plaintiff's obligations and commitment to fulfilling these responsibilities and protecting the interests of the Class. *See* Gilmore Decl., Ex. E.

**B.      The Court Should Approve Movant's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at *4 (S.D.N.Y. May 22, 2020) (J. Rakoff); *Bishins*, 2021 WL5741574, at *4;

*McKenna*, 2018 WL 1083971, at *6; *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015). Courts rely on counsel's past experiences when determining whether the lead plaintiff's selection is appropriate. *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d at 625 (relying on a declaration detailing counsel's extensive experience with complex class action litigations).

Movant has selected Hagens Berman to serve as Lead Counsel for the proposed Class. Hagens Berman has previously been appointed as lead counsel and has a demonstrated ability to work in an efficient fashion in the class's best interests. *See* Gilmore Decl., Ex. D. Hagens Berman is one of the country's leading securities litigation firms, advising clients in both individual and class action cases. *See id*. Hagens Berman has or is currently serving as Lead Counsel or Co-lead Counsel in several high-profile securities class actions, including in this District. *See id.*; *see e.g., Moshell v. Sasol Limited, et al.*, Case No. 1:20-cv-01008-JPC, ECF Nos. 52, 219 (S.D.N.Y.) (Hagens Berman acted as sole lead counsel and obtained final approval of $24 million settlement for the class). Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (1) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (2) approve Movant's selection of Hagens Berman to serve as Lead Counsel for the putative/proposed Class; and (3) grant such other and further relief as the Court may deem just and proper.

- 11 -

DATED: September 16, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Nathaniel A. Tarnor*
    Nathaniel A. Tarnor

322 8th Avenue, Suite 802
New York, NY 10001
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
nathant@hbsslaw.com

Reed R. Kathrein, *pro hac vice* forthcoming
Lucas E. Gilmore, *pro hac vice* forthcoming
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff Sean Cononie*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

                                    */s/ Nathaniel A. Tarnor*
                                    NATHANIEL A. TARNOR