## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE SHAPIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          vs.<br><br>TG THERAPEUTICS, INC., MICHAEL S. WEISS, and SEAN A. POWER,<br><br>                              Defendants | No. 1:22-cv-06106-JSR<br><br>Judge Jed S. Rakoff<br><br><u>CLASS ACTION</u><br><br><u>ORAL ARGUMENT REQUESTED</u> |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; <u>AND IN OPPOSITION TO ALL COMPETING MOVANTS</u>

## <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

I.   FRANK LUPACCHINO CANNOT SATISFY THE PSLRA LEAD PLAINTIFF
     REQUIREMENTS AND HIS MOTION SHOULD BE DENIED ................................. 5

     A.   Mr. Lupacchino Is Subject to Unique Defenses Concerning the Timing of
          His Class Period Transactions ............................................................... 5

     B.   Mr. Lupacchino's Options Trading Renders Him Atypical of the Average
          TG Therapeutics Shareholder ............................................................... 8

     C.   Mr. Lupacchino Is an Unknown Individual Who Failed to Make the
          Requisite Adequacy Showing in Support of His Motion ......................... 9

II.  BOSTON SATISFIES THE PSLRA LEAD PLAINTIFF REQUIREEMNTS AND
     SHOULD BE APPOINTED AS LEAD PLAINTIFF ....................................... 11

     A.   Boston Is the Presumptive Lead Plaintiff ............................................. 11

     B.   As the Only Institutional Investor Seeking Appointment as Lead Plaintiff,
          Boston Is the Paradigmatic Lead Plaintiff ........................................... 12

     C.   Boston's Sale of Its TG Therapeutics Holdings Prior to the End of the
          Class Period Does Not Affect Its Adequacy or Typicality ................... 15

CONCLUSION ..................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...................................................................................7

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...................................................................................7

*Bodri v. Gopro, Inc.*,
No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...................................17

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019)...........................................11

*Bowman v. Legato Sys., Inc.*,
195 F.R.D. 655 (N.D. Cal. 2000)....................................................................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................1, 3

*Christian v. BT Grp. PLC*,
No. 17-cv-00497, 2017 WL 3705804 (D.N.J. Aug. 28, 2017)...............................................17

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
No. 20-CV-2031 (JSR), 2020 WL 2614703 (S.D.N.Y. May 22, 2020) ...................3, 9, 10, 11

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009)......................................................................7

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
No. 20 Civ. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)...............................9

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................7

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009)...............................9

*Erickson v. Snap*,
No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635 (C.D. Cal. Sept. 18,
2017) ...................................................................................7, 8

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ........................2, 6, 7, 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)........................................................................2, 5

*In re Gen. Elec. Sec. Litig.*,
    No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ..................16

*George v. China Auto. Sys., Inc.*,
    No. 11 Civ. 7553 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013).....................7

*Gordon v. Sonar Cap. Mgmt. LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015) (Rakoff, J.) .......................................4

*In re IMAX Sec. Litig.*,
    272 F.R.D. 138 (S.D.N.Y. 2010) ...........................................................4, 5

*Juliar v. SunOpta, Inc.*,
    No. 08 Civ. 933 (PAC), 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ..................16

*Karp v. Diebold Nixdorf, Incorporated*,
    No. 19 Civ. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) ..................4

*Maiman v. Talbott*,
    No. SACV090012AGANX, 2009 WL 10675075 (C.D. Cal. Sept. 14, 2009) .......16

*Micholle v. Ophthotech Corp.*,
    No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)...........3, 8, 9

*Montoya v. Mamma.com Inc.*,
    No. 05 Civ. 2313 (HB), 2005 WL 1278097 (S.D.N.Y. May 31, 2005)...................16

*Perez v. HEXO Corp.*,
    No. 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ..............10

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015).......................................................7

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) ...................................................13, 14, 15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................4

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    No. 06 Civ. 5797 (PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)................15

*Randall v. Fifth St. Fin. Corp.*,
    No. 15-CV-7759(LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ............14, 15

*Schaffer v. Horizon Pharma Plc*,
    No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ................................4

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) ........................................................................17

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
    No. 05-cv-04617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ..................................16

**Rules & Statutes**

Fed. R. Civ. P. 23(a)(3).......................................................................................1, 9

15 U.S.C. § 78u-4 *et seq.* ................................................................................. *passim*

**Docketed Cases**

*In re Fannie Mae 2008 Sec. Litig.*,
    No. 1:08-cv-07831 (S.D.N.Y.)................................................................13, 14

*In re Novo Nordisk Sec. Litig.*,
    No. 3:17-cv-00209 (D.N.J.) ..............................................................................14

*In re Nu Skin Enters., Inc., Sec. Litig.*,
    No. 2:14-cv-00033 (D. Utah)............................................................................14

*In Re PTC Therapeutics, Inc. Sec. Litig.*,
    No. 2:16-cv-01224 (D.N.J.) ..............................................................................14

**Other Authorities**

Ellen M. Ryan & Laura E. Symons, 2012 CORNERSTONE REP. ON SEC. CLASS
    ACTION SETTLEMENTS 14 (Cornerstone Research 2013)........................................13

Michael A. Perino, *Markets and Monitors: The Impact of Competition and
    Experience on Attorneys' Fees in Securities Class Actions*....................................13

*There Are Plaintiffs: An Empirical Analysis of Securities Class Action
    Settlements*, 61 VAND. L. REV. 355, 378 (2008) ..................................................13

Proposed Lead Plaintiff Boston Retirement System ("Boston") respectfully submits this Memorandum of Law in further support of its Motion for appointment as Lead Plaintiff and approval of selection of Labaton Sucharow as Lead Counsel; and in opposition to all competing movants.[1]

## PRELIMINARY STATEMENT

Boston is entitled to appointment as Lead Plaintiff under the PSLRA because it is ***the only*** movant asserting the largest financial interest in this litigation that ***also*** satisfies the PSLRA's adequacy and typicality requirements.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring the appointment of the movant that "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure").  With losses exceeding $1.3 million in connection with its Class Period purchases of TG Therapeutics stock and a record of successfully representing investors as a lead plaintiff in securities class actions in district courts across the country, there can be no doubt that Boston has a substantial financial interest in this litigation and is adequate and typical in all respects.

While Frank Lupacchino ("Mr. Lupacchino"), the only remaining competing movant, may claim larger losses than Boston, a movant's losses are only the starting point of the PSLRA's analysis, and unlike Boston, Mr. Lupacchino's lead plaintiff application is plagued by fatal, unique defenses that undermine his typicality and adequacy, and require disqualification. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality

---

[1]    Unless otherwise noted, all defined terms and abbreviations remain unchanged from those in Boston's opening motion and supporting papers.  *See* ECF Nos. 7, 9-11.  In addition to Boston, four other TG Therapeutics investors filed for Lead Plaintiff appointment on September 16, 2022.  Three of those investors have subsequently withdrawn their motion or filed a notice of non-opposition to the competing motions.  *See* ECF Nos. 29, 31-32.  Accordingly, only Boston and Frank Lupacchino continue to vie for appointment.

or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). As detailed below, serious questions about the timing of Mr. Lupacchino's trading pattern, the nature of his options investments, and general capacity to adequately oversee the case will undoubtedly expose the Class to "unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). Boston's appointment does not expose the Class to any such risks.

Here, Mr. Lupacchino's superior financial interest rests entirely on two interrelated, and fatal, trading quirks which render him atypical and threaten to overwhelm the focus of the litigation. ***First***, Mr. Lupacchino purchased most of his TG Therapeutics shares ***after*** the Company's fraud was largely disclosed and is therefore subject to unique defenses concerning the timing of his transactions that undermine his typicality and adequacy. As demonstrated in the loss calculations accompanying his motion (*see* ECF No. 18-2), Mr. Lupacchino purchased ***95,000*** TG Therapeutics shares (nearly 80% of the shares Mr. Lupacchino held at the end of the Class Period) ***after*** the November 30, 2021 corrective disclosure which revealed the Food and Drug Administration's (the "FDA") previously undisclosed concerns related to the benefit-risk ratio and overall survival data for the Company's therapeutic product candidates, and caused the price of TG Therapeutics stock to fall nearly 35%. Mr. Lupacchino's "post-disclosure purchases suggest that [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions" and "[t]hese unusual trading patterns may well undermine the ability of [Mr. Lupacchino] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011).

**Second**, Mr. Lupacchino would expose the Class to unique defenses as lead plaintiff because a significant portion of his losses stem from options trading (*see* Mr. Lupacchino Loss Chart, ECF No. 18-2 at 3), rendering him atypical of the Class he seeks to represent and subject to unique defenses. *See Michaelle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (rejecting as atypical lead plaintiff movants that traded in options).

**Finally**, separate and apart from Mr. Lupacchino's atypical trading patterns, Mr. Lupacchino failed to demonstrate that he is a sophisticated investor or that he has **any** experience overseeing litigation, and therefore failed to make the requisite showing of adequacy to support his motion for Lead Plaintiff. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, No. 20-CV-2031 (JSR), 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020).

In contrast, Boston is well-versed in the oversight of attorneys, and based on this experience has already taken significant steps in directing Labaton Sucharow. These steps have included negotiating a conservative fee agreement, as well as instructing counsel to begin drafting an amended complaint considering the anticipated schedule to file the amended pleading. Under the sequential PSLRA lead plaintiff process, Boston is the only movant to satisfy the statutory test and should be appointed as Lead Plaintiff.

## <u>ARGUMENT</u>

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d at 266. To effectuate this goal, district courts are given broad discretion to reject lead plaintiff applicants upon a showing they are atypical, inadequate, or subject to unique defenses. 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).  The dispositive issue is whether there exists a "non-speculative risk that the movant [with the greatest financial loss] will not be adequate." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (listing cases).  As many courts in this District have noted, the standard of review "is a 'predictive and probabilistic' process that requires evaluation of 'potential' risks" that a movant's unique defense could threaten to become the focus of the litigation*. Karp v. Diebold Nixdorf, Incorporated*, No. 19 Civ. 6180 (LAP), 2019 WL 6619351, at *2 (S.D.N.Y. Dec. 5, 2019) (citation omitted); *see also Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (Rakoff, J.) ("The Court need not resolve [whether the defenses will succeed] as the inquiry at this stage is whether [the movant] is 'subject to unique defenses which threaten to become the focus of the litigation.'") (citation omitted).  The breadth of that inquiry underscores that the district court's "ultimate obligation to appoint as lead plaintiff [the candidate] who [is] most capable of representing the interests of the class members." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. LaBranche & Co.*, Inc., 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004) (internal citations and quotations omitted).

Here, Boston is the ***only*** movant that satisfies the financial interest, adequacy, and typicality requirements of the PSLRA and should be appointed as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Indeed, the appointment of Mr. Lupacchino severely undermines the prosecution of the Class' claims because such a lead plaintiff may be disqualified or rejected at later stages of litigation—a finding that could force the Court to reopen the lead plaintiff selection process in this litigation a second time.  *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection

process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses").  Boston's appointment does not expose the class to any such risks.

## I.     FRANK LUPACCHINO CANNOT SATISFY THE PSLRA LEAD PLAINTIFF REQUIREMENTS AND HIS MOTION SHOULD BE DENIED

### A.     Mr. Lupacchino Is Subject to Unique Defenses Concerning the Timing of His Class Period Transactions

Mr. Lupacchino's superior financial interest rests entirely on his substantial purchases of TG Therapeutics common stock *after* the November 30, 2021 corrective disclosure—the most qualitatively and quantitatively impactful corrective disclosure—and *after* numerous securities class action law firms publicly announced that they were investigating TG Therapeutics for securities fraud.  Mr. Lupacchino's post-disclosure purchases of TG Therapeutics common stock subject him to unique defenses "that render [Mr. Lupacchino] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); *Gary Plastic Packaging Corp.*, 903 F.2d at 179 (concluding that a plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its continued purchases . . . despite having notice of, and having investigated, the alleged fraud").

The complaint in this action alleges that the Defendants made materially false and misleading statements and failed to disclose that clinical trials of the drugs Ublituximab and Umbralisib revealed significant concerns related to the drugs' benefit-risk ratio and overall survival data, making it unlikely that the company would be able to obtain approval from the Food and Drug Administration (the "FDA") for New Drug Applications related to the two drugs.  Compl. ¶¶ 2-7, ECF No. 1.  On November 30, 2021, the Company announced that the FDA was planning a meeting to review the safety profile of the combination of the two drugs (combination referred to as "U2") and that the FDA's concerns giving rise to the meeting stemmed from an analysis of the previously undisclosed survival rate from the UNITY-CLL trial, a trial to study

5

the effects of U2.  This announcement was a pled corrective disclosure in the complaint and
caused TG Therapeutics' stock price to fall $8.16 per share, or 34.93%, to close at $15.20 per
share on November 30, 2021.  *See* ECF No. 1, ¶ 9.  The $8.16 per share stock drop
accompanying the November 30, 2021 corrective disclosure dwarfed the latter three drops
alleged in the complaint, which combined to an overall drop of $3.19.  *See id.* ¶¶ 10-15.

As set forth in Mr. Lupacchino's loss chart, Mr. Lupacchino held 25,000 shares of TG
Therapeutics stock on November 30, 2021 when the Company issued the press release revealing
the FDA's concerns with U2.  *See* ECF No. 18-2 (Mr. Lupacchino's Loss Chart); Compl. ¶ 9,
ECF No. 1 (the complaint alleging a November 30, 2021 corrective disclosure).  That same day,
a prominent class action law firm put out a press release announcing that, based on the TG
Therapeutics press release, it was investigating the Company for securities fraud, and the next
day, no fewer than three other prominent law firms made substantively similar releases.  *See*
Securities Class Action Press Releases, attached as Exhibits A through D to the Declaration of
Francis P. McConville.  Notwithstanding this troubling revelation, its widespread dissemination,
and the substantial decline in the value of TG Therapeutics stock, Mr. Lupacchino proceeded to
purchase an ***additional 95,000 shares*** of TG Therapeutics stock after the November 30, 2021
disclosure.  This amounted to a 380% increase in the number of shares owned by Mr.
Lupacchino, or ***79%*** of his total purchased shares.  Many of these purchases came even after the
second corrective disclosure on April 15, 2022, which disclosed that the Company had
withdrawn one of its key New Drug Applications.  Thus, the vast majority of Mr. Lupacchino's
shares were purchased after the fraud alleged in this action was largely disclosed.

Because of Mr. Lupacchino's atypical trading history, Defendants will argue that Mr.
Lupacchino's post-disclosure purchases "suggest that [he] invested in [TG Therapeutics]

notwithstanding notice of [D]efendants' misstatements and omission," thus undermining his

ability to "assert the fraud-on-the-market presumption of reliance, thereby rendering them

inadequate class representatives." *Faris*, 2011 WL 4597553, at *8.  The fraud-on-the-market

presumption of reliance is the bedrock of securities class action certification.[2]  Indeed, "without

the benefit of the presumption of reliance, requiring proof of individualized reliance from each

member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding

with a class action, since individual issues then would have overwhelmed the common ones."

*Erickson v. Snap,* No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *3 (C.D. Cal. Sept.

18, 2017) (citation omitted).  Thus, "post-disclosure purchases can defeat the typicality

requirement for class certification when plaintiffs made a disproportionally large percentage of

their purchases post-disclosure." *Id.* (quoting *GAMCO Investors v. Vivendi, S.A.*, 917 F. Supp.

2d 246, 261 (S.D.N.Y. 2013)); *see also Faris*, 2011 WL 4597553, at *8 (finding a lead plaintiff

movant subject to a unique defense when it had suffered 87% of its losses on securities

purchased after a corrective disclosure).[3]

Under analogous circumstances, the court in *Erickson* denied one movant's motion for

lead plaintiff appointment because it had purchased approximately **60%** of its shares after news

---

[2]  Under Section 10(b) of the Exchange Act, reliance must be proven.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005); *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988).  Plaintiffs may use the fraud-on-the-market theory, which entitles them to a rebuttable presumption of reliance.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).

[3]  *See also, e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting movant because its post-corrective disclosure "transactions raise serious questions regarding [the movant's] reliance on the alleged misrepresentations and omissions"); *George v. China Auto. Sys., Inc.*, No. 11 Civ. 7553 (KBF), 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013) (denying class certification where proposed class representatives bought shares post-disclosure, stating that "this will require that each of the named plaintiffs expend considerable time on unique defenses—precisely the situation the case law does not condone"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 603 (C.D. Cal. 2009) ("Of course, *unusual* post-disclosure trading patterns present typicality problems." (emphasis in original)).

broke regarding the very information the complaint alleged to be fraudulent. *Erickson*, 2017 WL 11592635, at *3. The court noted that there was "[t]here is no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court," and noting that the competing movants' pre-disclosure losses were "fairly close." *Id.* at *4. The situation here is no different, as Mr. Lupacchino suffers from the same defect as a potential lead plaintiff.

Under these circumstances, appointing Mr. Lupacchino as Lead Plaintiff would place the interests of the entire Class at unreasonable risk. This risk is entirely unnecessary here, given that Boston possesses a financial interest in the outcome of the litigation that is virtually identical to Mr. Lupacchino's, and does not suffer from the same debilitating trading issues. *See Faris*, 2011 WL 4597553, at *8 (finding "no reason to subject the class to this potential defense where there is another movant" that does not suffer from the same potential unique defenses arising from post-disclosure trading).[4]

### B. Mr. Lupacchino's Options Trading Renders Him Atypical of the Average TG Therapeutics Shareholder

Mr. Lupacchino's superior financial interest in this litigation is also due, in large part, to significant options trading which, were he to be appointed lead plaintiff, would subject the Class to unique defenses. *See* Mr. Lupacchino Loss Chart, ECF No. 18-2 at 3. Courts in this District have declined to appoint lead plaintiff movants with the largest claimed losses because a portion of those losses stem from options trading. *See Micholle*, 2018 WL 1307285, at *9 (rejecting lead

---

[4] When Mr. Lupacchino's post-disclosure purchases are removed from the calculation, Boston possesses the larger estimated loss. Mr. Lupacchino's losses, excluding losses on purchases he made after the first disclosure, are just under $705,000, in contrast to Boston's loss of over $1.3 million. *See* ECF No. 18-2 (Mr. Lupacchino's Loss Chart); ECF No. 10-2 (Boston's Loss Analysis). Moreover, in contrast to Mr. Lupacchino's flawed trading pattern, Boston purchased *all* of its TG Therapeutics shares prior to the first corrective disclosure. *See* ECF No. 10-2 (Boston's Loss Analysis).

plaintiff movant because options traders may '"introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and could subject the class to unique defenses, causing unnecessary conflict"') (citation omitted); *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (same).  Indeed, a lead plaintiff with substantial losses stemming from options trading "raises issues of his typicality and adequacy," including whether that lead plaintiff was "motivated by the same market incentives as class members who traded shares on the open market," and facts unique to options traders would threaten to "become the focus of the litigation . . . ." *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (citation omitted).

Here, Mr. Lupacchino lost 41% of his claimed losses on options trading, and is therefore not an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3).  As discussed *supra*, there is no reason here to appoint a lead plaintiff that exposes the class to unique defenses where Boston, a paradigmatic institutional lead plaintiff, satisfies all of the PSLRA's lead plaintiff requirements.  Further, Mr. Lupacchino's losses on TG Therapeutics common stock, excluding the options trading, are just under $900,000, meaning that Boston's $1.3 million losses far exceed Mr. Lupacchino's.  Thus, Boston has the largest loss in securities that do not expose the Class to unique defenses.  Therefore, because Mr. Lupacchino's options trading present the opportunity for Defendants to raise unique defenses, he cannot meet the PSLRA's lead plaintiff requirements.

### C.   Mr. Lupacchino Is an Unknown Individual Who Failed to Make the Requisite Adequacy Showing in Support of His Motion

Separate and apart from Mr. Lupacchino's atypical trading pattern, Mr. Lupacchino has simply failed to show that he meets the PSLRA's requirement that he is capable of "adequately

protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Evidence of a lead

plaintiff movant's lack of adequacy includes "the 'available resources and experience of the

proposed lead plaintiff . . . .'"  *City of Warren Police & Fire Ret. Sys.*, 2020 WL 2614703, at *2

(citation omitted).  Examining such evidence "promotes consistency with the PSLRA's aim of

ensuring a lead plaintiff can 'act like a 'real' client, carefully choosing counsel and monitoring

counsel's performance to make sure that adequate representation [i]s delivered at a reasonable

price.'"  *Id.*  (citation omitted).  A lead plaintiff movant fails to meet the adequacy requirement if

he lacks "meaningful litigation experience."  *Id.* at *3.  Further, a lead plaintiff movant having

"career experience that appears to have no bearing on the management of securities litigation,"

will "undermine [the movant's] claim that he can "'meaningfully oversee and control the

prosecution of this consolidated class action.'"  *Id.* (citation omitted).

      Here, Mr. Lupacchino has failed to show that he meets the PSLRA's adequacy

requirement.  Mr. Lupacchino describes himself as a "sophisticated investor," with a "Bachelor

of Science in Finance," who is retired from a career as a new car dealer.  Mem. of Law in Supp.

of Frank Lupacchino's Mot. for Appointment as Lead Pl. and Approval of Selection of Counsel

at 9, ECF No. 17.  However, identical descriptions by potential lead plaintiff movants have been

summarily rejected.  For example, in *Perez v. HEXO Corp.*, Judge Buchwald declined to appoint

as lead plaintiff the movant with the largest financial interest because the court was skeptical that

the movant "an individual investor about whom little is known – possesse[d] the requisite

sophistication to serve as lead plaintiff . . . ."  No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3

(S.D.N.Y. Feb. 25, 2020).  Similar to Mr. Lupacchino's case, the lead plaintiff movant in *Perez*

had provided information that he held a Bachelor degree, that he was retired but had previously

had a career as an engineer, and that he had decades of experience investing in securities.  *Id.*
The court found this proffer insufficient to demonstrate his adequacy.  *Id.*[5]

The only experience overseeing lawyers or litigation that Mr. Lupacchino points to is
hiring attorneys "for real estate and business-related manners."  Mem. of Law in Supp. of Frank
Lupacchino's Mot. for Appointment as Lead Pl. and Approval of Selection of Counsel at 9, ECF
No. 17.  This is a far cry from demonstrating the "financial and legal sophistication," that courts
look for to ensure that a lead plaintiff "will play a meaningful role in limiting the 'lawyer-driven
litigation that the PSLRA was designed to curtail . . . .'"  *Perez*, 2020 WL 905753, at *2 (citation
omitted).  Mr. Lupacchino has no apparent experience overseeing litigation, let alone securities
litigation, evidencing that "however well-meaning and motivated to prosecute this litigation,
[Mr. Lupacchino] will not adequately protect the interests of the class."  *City of Warren Police &
Fire Ret. Sys.*, 2020 WL 2614703, at *4 (declining to appoint the lead plaintiff movant with the
largest losses, in part, because that movant lacked experience with any relevance in litigation or
managing securities litigation).  Therefore, Mr. Lupacchino, however well-intentioned he may
be, simply fails to meet the PSLRA's lead plaintiff adequacy standard.

## II.     BOSTON SATISFIES THE PSLRA LEAD PLAINTIFF REQUIREEMNTS AND SHOULD BE APPOINTED AS LEAD PLAINTIFF

### A.     Boston Is the Presumptive Lead Plaintiff

Boston is the only movant able to satisfy the PSLRA's statutory criteria for appointment
as Lead Plaintiff.  As indicated in its moving papers, Boston incurred $1,353,969.03 in losses as
calculated on a LIFO basis as a result of its transactions in TG Therapeutics common stock

---

[5] *See also In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5-11
(N.D. Ill. Nov. 15, 2019) (appointing an institutional investor lead plaintiff over individuals with
larger losses, finding the individuals did not meet the adequacy requirement in part because of
their seeming lack of experience).

during the Class Period.  *See* McConville Decl. Ex. B, ECF No. 10-2 (Boston's Loss Analysis).

Boston is typical because its claims are premised on the same facts and legal theories as those the

Class.  *See* Mem. in Supp. of Mot. at 6, ECF No. 9.  Finally, Boston is adequate because it is

highly incentivized to vigorously prosecute this litigation and oversee its qualified choice of

counsel, and because it lacks any antagonism towards the Class.  *See id.* at 7–8.

Boston is a governmental defined benefit plan that provides retirement benefits to

employees of the City of Boston, Massachusetts (and their beneficiaries).  Established in 1923,

Boston has $6.4 billion in assets under management overseen for the benefit of more than 34,000

members.  Thus, as a public pension system, Boston has nearly one hundred years of fiduciary

experience, including the oversight of outside counsel, and undoubtedly possesses the

sophistication and resources to effectively monitor counsel in complex litigation.

Moreover, Boston has already been effectively monitoring and directing counsel.  First, it

determined to seek appointment as Lead Plaintiff only after several discussions with counsel.

Second, Boston negotiated a conservative fee agreement with proposed Lead Counsel in order to

best protect the Class should counsel seek fee approval at the conclusion of the Action.  Third,

Boston has instructed Labaton Sucharow to continue investigating the Action, while also

commencing drafting an amended consolidated complaint in anticipation of Lead Plaintiff and

Lead Counsel appointment.

Accordingly, Boston, as a sophisticated institutional investor and fiduciary, is the most

adequate plaintiff under the PSLRA and best suited to vigorously represent the Class.

**B.     As the Only Institutional Investor Seeking Appointment as Lead
         Plaintiff, Boston Is the Paradigmatic Lead Plaintiff**

Understanding the value of institutional investor leadership, many courts, including courts

in this District, have recognized that the PSLRA reflects a clear preference for institutional

investors to be appointed as lead plaintiff in securities class actions.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005).

Capital markets experts agree that class members benefit when institutional investors such as Boston serve as lead plaintiff, resulting in substantially larger settlements, and lower agency costs.  *See* Ellen M. Ryan & Laura E. Symons, 2012 CORNERSTONE REP. ON SEC. CLASS ACTION SETTLEMENTS 14 (Cornerstone Research 2013) ("In our analysis of institutional investors, we continued to find that the presence of public pensions as lead plaintiffs is associated with significantly higher settlement amounts"); Michael A. Perino, *Markets and Monitors: The Impact of Competition and Experience on Attorneys' Fees in Securities Class Actions*, 15 ST. JOHN'S UNIV. SCH. OF LAW L. STUD. RES., Working Paper No. 06-0034, 2006 ("Because public pension funds appear *ex ante* to be the most capable and best positioned institutional lead plaintiffs on average all other things being equal, the participation of a public pension fund as lead plaintiff should be correlated with lower fee requests by class counsel and lower fee awards"); James D. Cox, Randall S. Thomas & Lynn Bai, *There Are Plaintiffs and ... There Are Plaintiffs: An Empirical Analysis of Securities Class Action Settlements*, 61 VAND. L. REV. 355, 378 (2008) ("We find that the presence of an institutional lead plaintiff increases settlement size overall").

In this case, Boston's motion is the paradigm envisioned by the PSLRA: one "strong lead plaintiff" with one counsel to "actively manage the litigation on behalf of the class."  *Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000).  Boston is familiar with the PSLRA's requirements given its long-standing involvement as a lead plaintiff in numerous landmark securities class actions across the Country, which have successfully recovered more than $500 million dollars for injured investors, including *In re Fannie Mae 2008 Securities Litigation*, No.

1:08-cv-07831 (S.D.N.Y.) (recovering $170 million for investors); *In re Novo Nordisk Securities Litigation*, No. 3:17-cv-00209 (D.N.J.) (recovering $100 million for investors); *In re Nu Skin Enterprises, Inc., Securities Litigation*, No. 2:14-cv-00033 (D. Utah) (recovering $47 million for investors); and *In Re PTC Therapeutics, Inc. Securities Litigation*, No. 2:16-cv-01224 (D.N.J.) (recovering $14.75 million for investors), among others.  Consistent with its successful track record, Boston is precisely the kind of lead plaintiff envisioned by the PSLRA.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D at 338 (institutional investor with "extensive litigation experience, [that] has served as lead plaintiff in multiple securities class actions, and has overseen sizeable recoveries in several of these . . . is precisely the type of plaintiff envisioned under the PSLRA").

It is no surprise, therefore, that when faced with two investors with relatively equal losses, courts tend to favor the institutional investor.   For example, in *Randall v. Fifth St. Fin. Corp.*, Judge Kaplan decided appointed an institutional investor lead plaintiff over individual movants.  No. 15-CV-7759(LANK), 2016 WL 462479, at *1-2 (S.D.N.Y. Feb. 1, 2016).  Under one calculation considered by the court, the individual with the largest loss had a 17.6% greater loss than the institution.  *Id.* at *2.  Nonetheless, the court declined to presume that the individual with larger losses was the most adequate plaintiff, noting that "[a]s the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption . . . some courts have declined to afford this presumption to movants—particularly individual investors—when the difference between their alleged losses and those of competing movants— particularly institutional investors—was 'minimal.'"  *Id.*  In making this decision, the court relied on "the Congressional preference for institutional lead plaintiffs in private securities class actions."  *Id.* at *3.

In this instance, the difference between the losses of Boston and Mr. Lupacchino is approximately 11.6%, a ***smaller loss*** than the *Randall* court considered minimal in appointing an institutional investor lead plaintiff over an individual. [6]  Such an insignificant difference cannot outweigh the presumption in favor of appointing an institutional investor such as Boston as Lead Plaintiff.  *See, e.g., Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (concluding that *de minimus* loss difference "cannot dictate such an important result" and appointing an institutional investor as lead plaintiff).  Therefore, because of the minimal difference in the losses between Boston and Mr. Lupacchino, and the PSLRA's preference for institutional investors, Boston is the appropriate lead plaintiff in this instance.

### C.   Boston's Sale of Its TG Therapeutics Holdings Prior to the End of the Class Period Does Not Affect Its Adequacy or Typicality

Boston anticipates that competing movants may attempt to challenge its typicality and adequacy because of the sale of its holdings prior to the final corrective disclosure (May 31, 2022) as pled in the initial complaint.   However, this challenge would be without merit and in no way renders Boston atypical.  The following chart establishes Boston's holdings in TG Therapeutics stock on the largest and most impactful corrective disclosure during the Class Period on November 30, 2021 (*see* ECF No. 10-2):

| Disclosure Date | BOSTON Holdings |
|---|---|
| November 30, 2021 | 52,520 |

---

[6] Although this analysis focuses on the percent difference in losses, the difference between the losses of Boston and Lupacchino also is much smaller than the dollar amount courts have considered negligible.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D at 388 n.4 (characterizing a $400,000 difference between two movants "[g]iven the probable margin of error . . . roughly equal").

As the chart demonstrates, Boston held through the first and largest corrective disclosure, incurring substantial losses as a result of the alleged securities violations.  "[W]here a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff."  *Juliar v. SunOpta, Inc.*, No. 08 Civ. 933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (appointing institutional investor who sold shares after partial disclosure as lead plaintiff); *see also In re Gen. Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *6 (S.D.N.Y. July 29, 2009) (finding no loss causation defense where a putative lead plaintiff sold all its shares after a partial disclosure).

Indeed, courts routinely appoint investors as lead plaintiff when they sell their shares of stock after a partial disclosure and are not holding any shares at the time of a later disclosure. *See, e.g.*, *Maiman v. Talbott*, No. SACV090012AGANX, 2009 WL 10675075, at *3 (C.D. Cal. Sept. 14, 2009) (rejecting argument against lead plaintiff movant "who sold their shares before the end of the class period," because "[l]oss causation . . . can be established by partial disclosure *during the class period* which causes the price of shares to decline"); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-04617 (RJH), 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006) (concluding the institutional movant "is not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period"); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (same).  Accordingly,

16

while Boston may have sold its shares prior to the final disclosures, it is not an impediment to

serving as lead plaintiff.[7]

Because Boston satisfies all of the PSLRA's requirements for appointment as Lead Plaintiff,

its motion should be granted.

## CONCLUSION

For the reasons set forth above and in its opening brief, Boston respectfully requests that

the Court appoint Boston as Lead Plaintiff, approve Boston's selection of Labaton Sucharow

LLP as Lead Counsel for the Class, and deny the competing motions.

DATED:  September 26, 2022

Respectfully submitted,

*/s/ Francis P. McConville*

Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ebelfi@labaton.com
fmcconville@labaton.com

---

[7]  Moreover, it is well established that a lead plaintiff need not have standing to state a claim on every single day of the class period.  *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal. 2005) ("[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action") (quoting *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.")).  That said, to the extent necessary, Boston is prepared to add an additional class representative who held TG Therapeutics shares through April 15, 2022, May 31, 2022, and June 1, 2022 disclosures, thereby preemptively addressing any potential concerns that may be raised during this litigation.  *See Christian v. BT Grp. PLC*, No. 17-cv-00497, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) ("I take some comfort in the Pension Fund's offer to 'include an additional class representative who held shares of BT group through the final disclosure' in an amended complaint.") (citing *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("The PSLRA does not prohibit the addition of named plaintiffs to aid the Lead Plaintiff in representing the class."); *see also Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) (concluding that "additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.").

*Counsel for Proposed Lead Plaintiff*
*Boston Retirement System and*
*Proposed Lead Counsel for the Class*