UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
EUGENE SHAPIRO, Individually
and on Behalf of All Others
Similarly Situated,              22-cv-6106 (JSR)

         Plaintiff,              OPINION AND ORDER


    -v-

TG THERAPEUTICS, INC.,
MICHAEL S. WEISS, and SEAN A.
POWER,

         Defendants.
```

JED S. RAKOFF, U.S.D.J.:

This is a putative class action filed by plaintiff Eugene Shapiro against defendants TG Therapeutics, Inc. ("TG Therapeutics"), a biotechnology firm, and two of its officers, Michael Weiss and Sean Power, on behalf of similarly-situated investors in TG Therapeutics. The Complaint alleges that the defendants made false and misleading statements relating to the development of two new drugs, Ublituximab and Umbralisib.

Two investors in TG Therapeutics, Frank Lupacchino and Boston Retirement System ("BRS"), moved to be appointed as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(1).[1] After full briefing, the Court held an evidentiary hearing in which, inter alia, it posed questions both to Mr. Lupacchino and to Natacha Thomas, the BRS General Counsel,

---

[1] Initially, three other investors also moved for appointment as lead plaintiff, but they have withdrawn their motions. See ECF Nos. 29, 31, 32.

1

who is to have oversight responsibility if BRS is selected as lead plaintiff. See Conference of Sept. 30, 2021, Tr. 3:12-15. Thereafter, in an Order dated October 10, 2022, the Court granted BRS's motion and denied Mr. Lupacchino's, thereby appointing BRS as lead plaintiff and approving its choice of lead counsel, Labaton Sucharow LLP ("Labaton Sucharow"). See ECF No. 41. That Order stated that an opinion would follow explaining the reasons for the Court's rulings. See id. Here is that Opinion.

I.   Plaintiffs' Allegations

TG Therapeutics is a biopharmaceutical company. Its products include Ublituximab and Umbralisib, which are both candidate treatments for B-cell malignancies and autoimmune diseases such as lymphoma. Compl., ECF No. 1, at ¶ 2.

Between January 2020 and September 2021, TG Therapeutics submitted Ublituximab and Umbralisib to the Food and Drug Administration ("FDA") for approval. Id. at ¶¶ 2-6. During this period, the Complaint alleges, the defendants caused investors to have an overly optimistic expectation of FDA approval. Id. at ¶ 7.

The truth came out, to some extent, on November 30, 2021. Id. at ¶ 8. On that day, TG Therapeutics issued a press release stating that the FDA planned to host a meeting at which it would ask searching questions about Ublituximab and Umbralisib. The market took this as a bad sign. Id. On the news, TG Therapeutics' stock price fell $8.16 per share, or 34.93%, to close at $15.20 per share on November 30, 2021. Id. at ¶ 9.

The prospects for Ublituximab and Umbralisib did not improve. On April 15, 2022, TG Therapeutics issued a press release stating that it had voluntarily withdrawn its applications for using the combination of Ublituximab and Umbralisib to treat chronic lymphocyte lymphoma and small lymphocyte lymphoma. Id. at ¶ 10. On that news, TG Therapeutics' stock price fell $1.93 per share, or 21.81%, to close at $6.92 per share on April 18, 2022. Id. at ¶ 11. About one-and-a-half months later, on May 31, 2022, TG Therapeutics announced that the FDA had extended the Prescription Drug User Fee Act date for Ublituximab to December 28, 2022 "to allow time to review a submission provided by the Company in response to an FDA information request, which the FDA deemed a major amendment," an announcement which caused the price of TG Therapeutics stock to fall $0.75 per share, or 14.51%, to close at $4.42 per share on May 31, 2022. Id. at ¶¶ 12-13. Finally, on June 1, 2022, TG Therapeutics announced that, due to safety concerns, it had withdrawn its application for approval of Umbralisib. Id. at ¶ 14. On that news, the price of TG Therapeutics' stock fell $0.51 per share, or 11.53%, to close at $3.91 per share on June 1, 2022. Id. at ¶ 15. In total, between November 30, 2021 and June 1, 2022, TG Therapeutics' stock fell $19.45, or approximately 82.91%. Id. at ¶¶ 9-15.

On July 18, 2022, Eugene Shapiro, an investor in TG Therapeutics, filed this putative class action. The putative class includes all investors who purchased or otherwise acquired TG

Therapeutics securities between January 15, 2020 and May 31, 2022, (the "Class Period"), excluding the defendants.

## II. Appointment of Lead Plaintiff

### a. Legal Framework

The Private Securities Litigation Reform Act ("PSLRA") governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty days of the publication, for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3). After notice has been published, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the plaintiff that the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the investor that:

(aa) has either filed the complaint or made a motion in response to a notice;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the

4

Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Such a presumption may nonetheless be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### b. Analysis

Mr. Lupacchino and BRS are the only two moving plaintiffs who did not withdraw their motions. Both parties submitted timely motions. See ECF Nos. 7, 16. While Mr. Lupacchino has made a showing of being the presumptive most adequate plaintiff, BRS has rebutted the presumption in favor of appointing Mr. Lupacchino. Thus, the Court appointed BRS as lead plaintiff.

### 1. Largest Financial Interest

To determine which plaintiff has the largest financial interest in relief sought by the class in a securities fraud action, courts have looked to "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005). Mr. Lupacchino claims losses of $1,531,691.56 on his purchase of 120,000 gross shares and 120,000 net shares. Decl. of Adam M. Apton, ECF No. 18, Ex. B [hereinafter, "Apton Decl."]. BRS claims losses of $1,353,969.03 on

its purchase of 68,270 gross shares and 0 net shares. Decl. of Francis P. McConville, ECF No. 10, Ex. B [hereinafter, "McConville Decl."]. Thus, Mr. Lupacchino has the largest financial interest.

### 2. Satisfaction of Rule 23

Although Mr. Lupacchino has the largest financial interest, he does not benefit from the presumption of greatest adequacy unless he also satisfies the requirements of Rule 23. At the lead plaintiff stage, "a lead plaintiff movant need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." In re Tronox, Inc., 262 F.R.D. 338, 344 (S.D.N.Y. 2009). Both moving plaintiffs have made a preliminary showing of satisfying these requirements.

#### i. Typicality

The typicality requirement is satisfied when a plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all class members. See In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009). Courts in this Circuit have held that the "typicality requirement is not demanding." In re Prestige Brands Holdings, Inc., No. 05 Civ. 6924(CLB), 2007 WL 2585088, *2-3 (S.D.N.Y. 2007).

Both moving plaintiffs have made a prima facie showing of typicality. Both moving plaintiffs allege that their claims arise from defendants' misstatements and omissions in the run-up to TG Therapeutics' applications to the FDA for approval of Ublituximab and Umbralisib. This is the same course of events that allegedly

6

injured the other members of the class. Moreover, both plaintiffs allege that they were harmed when disclosures caused the value of TG Therapeutics securities to decline. See Mem. of Law in Support of Boston Retirement System's Motion for Appointment as Lead Plaintiff, ECF No. 9, at 6 [hereinafter, "BRS Memorandum"]; Mem. of Law in Support of Frank Lupacchino's Motion for Appointment as Lead Plaintiff, ECF No. 17, at 8; In re Petrobras Sec. Litig., 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015) (finding typicality where a plaintiff sought "recovery for losses incurred as a result of defendants' alleged misrepresentations and omissions with respect to" a single course of conduct "whose revelation resulted in declines in the price of . . . securities").

Each moving plaintiff has argued against the other's typicality. First, BRS argues that Mr. Lupacchino is not typical because a significant portion of his losses stem from trading in TG Therapeutics options. Boston Retirement System's Mem. of Law in Opposition to All Competing Movants, ECF No. 35, at pp. 3, 8-9 [hereinafter, "BRS Opposition"]. While it is true that options pose different risks from stocks, and options are relatively complex financial interests that may "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, Micholle v. Ophthotech Corp., No. 17-CV-1758, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018), Mr. Lupacchino's losses from trading in TG Therapeutics options still stem from the same course of events that caused other class members'

7

losses from holding TG Therapeutics stock. Moreover, Mr. Lupacchino's claim to be compensated for losses from trading options relies on the same legal theory as all other claims to be compensated for losses from holding TG Therapeutics stock. Finally, Mr. Lupacchino suffered substantial losses (approximately $900,000) from holding TG Therapeutics stock. Apton Decl., ECF No. 18, Ex. B. Thus, Mr. Lupacchino's holding options is a "minor variation[] in the fact patterns underlying individual claims," which does not defeat typicality. Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

More significant is BRS's second argument, which alleges that Mr. Lupacchino is not typical because he is subject to a unique defense. BRS Opposition, ECF No. 35, at 5-8. Section 10(b) of the Exchange Act requires a plaintiff to prove that he relied on the defendants' wrongful statement or omission. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005). Typically, securities fraud plaintiffs are entitled to a rebuttable presumption of reliance on public, material misrepresentations regarding securities traded in an efficient market, a presumption known as "fraud on the market." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 461 (2013). Without the fraud-on-the-market presumption of reliance, plaintiffs would have to prove reliance on an individualized basis, which could prevent plaintiffs from proceeding with a class action. Erickson v. Snap, No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017). The fraud-on the-market presumption,

however, is rebuttable if a plaintiff purchases securities "notwithstanding notice of defendants' misstatements and omissions." Faris v. Longtop Fin. Techs. Ltd., No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011).

Since Mr. Lupacchino purchased nearly 80% of his TG Therapeutics shares after TG Therapeutics' initial corrective disclosure, this defense might well be raised. BRS Opposition, ECF No. 35, at 6. And a plaintiff's purchase of securities after a corrective disclosure can defeat typicality. See, e.g., In re Petrobras Sec. Litig., 104 F. Supp. 3d at 623 (rejecting movant because its post-corrective disclosure "transactions raise serious questions regarding [the movant's] reliance on the alleged misrepresentations and omissions"); GAMCO Invs., Inc. v. Vivendi, S.A., 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013) ("[P]ost-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionately large percentage of their purchases post-disclosure . . . .").

Nonetheless, as BRS concedes, TG Thereapeutics' initial corrective disclosure was merely a partial disclosure. BRS Opposition, ECF No. 35, at 16. After that disclosure, the market priced in some additional risk that TG Therapeutics' products would not be approved. But TG Therapeutics' alleged misrepresentations and/or omissions continued to injure its investors after this date, when it made subsequent corrective disclosures on April 15, 2022, May 31, 2022, and June 1, 2022. Compl., ECF No. 1, at ¶¶ 9-15. Thus,

9

Mr. Lupacchino's purchase of securities after TG Therapeutics' initial corrective disclosure does not render him atypical. See In re Tronox, Inc. Sec. Litig., 262 F.R.D. 338, 346 (S.D.N.Y. 2009) ("Without more, [moving plaintiff's] purchase of these shares after the partial disclosures does not render [moving plaintiff] atypical or subject it to unique defenses.").

For his part, Mr. Lupacchino argues that BRS is atypical because it is subject to its own unique defense. Frank Lupacchino's Mem. of Law in Opposition to the Competing Motions for Lead Plaintiff, ECF No. 34, at 2, 7-9. Since BRS sold all of its TG Therapeutics shares on November 30, 2021, Mr. Lupacchino argues that BRS lacks standing to pursue damages resulting from misrepresentations made between November 30, 2021 and May 18, 2022. Id. But this is not a strong argument. Lead plaintiffs need not have standing to sue for every claim on every day of the class period. Hevesi v. Citigroup, Inc., 366 F.3d 70, 82-83 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.").

In sum, Mr. Lupacchino and BRS have both made a prima facie showing of typicality. Both assert claims that arise from the same series of events and are based on the same legal theories as the claims of all class members. While each is potentially subject to a unique defense, these defenses are not sufficiently significant to defeat typicality.

ii. Adequacy

Both plaintiffs have also made a prima facie showing of adequacy. "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Both plaintiffs appear to have selected competent counsel. Mr. Lupacchino has chosen Levi & Korsinsky LLP, and BRS has chosen Labaton Sucharon LLP. From their resumes, these firms appear experienced in securities class action litigation. See Apton Decl., ECF No. 18, Ex. E; McConville Decl., ECF No. 10, Ex. D. Moreover, no plaintiff has identified any conflict with the class. Finally, as previously noted, both plaintiffs have over a million dollars at stake, ensuring their interest in the outcome of the case and the vigor of their advocacy.

The inquiry, however, does not stop here. See Perez v. HEXO Corp., No. 1:19-cv-10965-NRB, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020). Courts must also consider such factors as the "available resources and experience of the proposed lead plaintiff," Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 191 (S.D.N.Y. 2008), in order to ensure the plaintiff can "act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 307 (S.D.N.Y.

11

2001). This part of the inquiry is particularly important when a moving plaintiff is an individual investor. Perez, 2020 WL 905753, at *3.

Mr. Lupacchino has made a somewhat limited showing of meeting this additional requirement. While Mr. Lupacchino has over forty years of investment experience and represents that he has experience in managing attorneys in real estate and other matters related to his business, he has no prior experience managing securities class actions. See Conference of Sept. 30, 2022, Tr. 15:13-17. Tellingly, he admitted that he had not read the Complaint, even though he signed an affidavit swearing that he had reviewed it. See id. at 4:12-13; Apton Decl., ECF No. 18, Ex. A.

By contrast, Ms. Thomas has read the Complaint. Conference of Sept. 30, 2022, Tr. 9:16-17. While she personally has only limited experience in managing securities class actions, see id. 11:3-17, she is part of a team that has considerable such experience. In particular, BRS has served as the lead plaintiff in several significant securities class actions, which jointly have recovered more than $500 million for injured investors. These matters include In re Fannie Mae 2008 Securities Litigation, No. 1:08-cv-07831 (S.D.N.Y.) (recovering $170 million for investors); In re Novo Nordisk Securities Litigation, No. 3:17-cv-00209 (D.N.J.) (recovering $100 million for investors); In re Nu Skin Enterprises, Inc., Securities Litigation, No. 2:14-cv-00033 (D. Utah) (recovering $47 million for investors); and In Re PTC

Therapeutics, Inc. Securities Litigation, No. 2:16-cv-01224 (D.N.J.) (recovering $14.75 million for investors).[2]

In short, while Mr. Lupacchino and BRS have both made a prima facie showing of adequacy, the Court has considerable doubts about Mr. Lupacchino's serious involvement in managing his counsel.

### 3. Rebutting the Presumption

Moreover, even if Mr. Lupacchino, by virtue of having the greatest loss, is entitled to the presumption of greatest adequacy, that presumption can be rebutted if the presumptively most adequate plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, that presumption is rebutted, for at least three reasons.

First, the weight of the presumption in favor of Mr. Lupacchino arising from greatest loss is weak. The presumption is based on the Congress's surmise that the plaintiff with the most money at stake will most vigorously pursue the interests of the class. Accordingly, "[a]s the difference among competing plaintiffs' alleged losses

---

[2] At the evidentiary hearing, counsel for Mr. Lupacchino noted a prior case in which BRS was appointed lead plaintiff and in which class certification subsequently was denied because the court determined that BRS would be an inadequate representative of the class. See In re Allergan PLC Sec. Litig., No. 1:18-cv-12089 (S.D.N.Y.), Dkt. No. 151. In Allergan, however, BRS was determined to be an inadequate class representative because it retained the counsel of two law firms, Pomerantz LLP and the Thornton Law Firm, in contravention of the court's express instruction. Id. at 10-16. Here, BRS seeks to appoint neither Pomerantz LLP nor the Thornton Law Firm as lead counsel, and Ms. Thomas represents that she was not employed as BRS's General Counsel for the Allergan case. Conference of Sept. 30, 2022, Tr. 25:6.

shrinks, so too does the persuasiveness of the presumption." Randall v. Fifth St. Fin. Corp., No. 15-CV-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016). The difference between Mr. Lupacchino's claimed loss and BRS's claimed loss is relatively small; BRS's loss is approximately 88% the size of Mr. Lupacchino's. See id. (deciding that the presumption in favor of an individual moving plaintiff was rebutted when that individual had a 17.6% greater loss than an institutional investor). Thus, it is not credible that Mr. Lupacchino will be substantially more interested in the outcome of this matter than BRS, and the presumption in his favor should be given little weight.

Second, BRS has a greater ability to represent the class's interests than Mr. Lupacchino does. BRS is an institutional investor with significant resources, expertise, and experience. It is precisely the sort of plaintiff that Congress intended to empower when it enacted the PSLRA. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). By contrast, Mr. Lupacchino has no experience in managing securities class actions.

Third, Mr. Lupacchino's testimony at the hearing, as mentioned above, gave the Court grounds to doubt that he would actively manage the litigation in the manner envisioned by Congress.

14

Thus, even assuming Mr. Lupacchino has made out a prima facie case to be considered the presumptive lead plaintiff under the PSLRA, BRS has successfully rebutted this presumption through evidence clearly indicating that it is better able to represent the interests of the class. The Court thus appointed BRS as the lead plaintiff in this consolidated action. See ECF No. 41.

### III. Appointment of Lead Counsel

The PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). "The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" Kaplan v. S.A.C. Capital Advisors, L.P., 311 F.R.D. 373, 383 (S.D.N.Y. 2015) (quoting Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)). Labaton Sucharow's resume demonstrates that it possesses experience litigating securities class actions. See McConville Decl., ECF No. 18, Ex. D. Further, the Court has examined Labaton Sucharow's retainer agreement with BRS, and while that agreement is not binding on the Court, it reinforces the Court's confidence in Labaton Sucharow's professionalism.

For the foregoing reasons, the Court appointed Labaton Sucharow as lead counsel. See ECF No. 41. Now that lead plaintiff and lead counsel have been appointed, the following schedule will govern the next phase of this litigation. Plaintiff must file an amended complaint by no later than October 28, 2022. Defendants must file any motion to

15

dismiss by no later than November 17, 2022. Any opposition to such a motion must be filed by no later than December 2, 20222, and any reply to such opposition must be filed by December 14, 2022. The Court will hold oral argument on any motion to dismiss on December 21, 2022.

    SO ORDERED.

New York, NY
October 3₁, 2022

                                      JED S. RAKOFF, U.S.D.J.